# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                   Case No. 08-Cr-086

DONALD W. SIMMS, II,

      Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT, JR.

### NATURE OF CASE

On March 18, 2008, a federal grand jury sitting in this district returned a five-count indictment against defendant Donald W. Simms, II. On April 15, 2008, a superseding six-count indictment was filed. Counts One and Two of the superseding indictment charge the defendant with being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Counts Three, Four and Six charge the defendant with possessing with intent to distribute a mixture and substance containing marijuana, a Schedule I controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Count Five charges the defendant with possessing firearms in furtherance of the drug trafficking crimes charged in Counts Three and Four of the indictment in violation of 18 U.S.C. § 924(c)(1)(A)(i).

On April 17, 2007, the defendant appeared before United States Magistrate Judge Aaron E. Goodstein for arraignment on the superseding indictment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued at that time, the defendant has filed a motion to suppress evidence. (Docket #27). The defendant seeks suppression of items seized

by law enforcement officers on December 12, 2007, from his residence, his person and his vehicle pursuant to a state search warrant. In addition, the defendant has moved to suppress evidence seized from an ABF container on March 24, 2008. The motions will be addressed herein.

On June 16, 2008, the court conducted an evidentiary hearing on the defendant's motion to suppress items seized on December 12, 2007, from his vehicle, residence and his person. Detectives Jasemin Pasho,[1] Keith Dodd and Brett Huston of the Milwaukee Police Department (MPD) testified on behalf of the government. The defendant testified on his own behalf. Subsequently, the parties filed post-hearing briefs. Based on the testimony and other evidence presented at the hearing, the court now makes the following findings of fact.

## MOTION TO SUPPRESS EVIDENCE SEIZED ON DECEMBER 12, 2007

### Findings of Fact

In December 2007, Detective Jasemine Pasho of the Milwaukee Police Department participated in an investigation of Donald Simms, who resided at 5247 N. 66th Street in Milwaukee, Wisconsin. On Friday, December 7, 2007, she conducted a garbage "pull" at the residence at 5247 N. 66th Street. She described the "garbage pull" as basically searching garbage retrieved from a particular address, analyzing the garbage and looking for evidence of a crime.

Prior to conducting the garbage search, Detective Pasho telephoned the City of Milwaukee Sanitation Department to make sure that the city's winter regulations were in place at the time. When winter regulations are in effect, residents are not required to bring their

---

[1] Jasemin Pasho's name was Jasemin Miscichoski in December 2007.

garbage carts to the street. Rather, the sanitation workers retrieve the garbage carts from the properties. Winter regulations are in effect because of the snow and because sanitation workers, who also do snow and ice removal, cannot designate a specific date that the garbage would be picked up. Residents are given notice of the winter regulations by a flyer attached to the garbage carts prior to the date the winter regulations go into effect. The media also advises residents about the change to winter regulations for garbage collection and the information is also posted on an internet site.

When Detective Pasho called the Sanitation Department, she inquired about garbage collection in the 5200 block of N. 66th Street, including the usual garbage collection day. She asked the person she spoke to how garbage is collected when a garbage cart is located behind a fence or alongside of a garage. She was advised that, under winter regulations, the sanitation worker would go onto the property and retrieve the cart and garbage from its location. Detective Pasho did not ask the person about a property having a "no trespassing" sign. Detective Pasho did not obtain the name or title of the person she talked to at the Sanitation Department. She testified that she made several calls to the Sanitation Department regarding the 5200 block of N. 66th Street.

Based on her inquiry to the Sanitation Department, Detective Pasho learned that winter rules were in effect on December 7, 2007. At approximately 6:00 to 7:00 a.m. on that day, Detective Pasho drove to the defendant's residence in a Department of Public Work's vehicle. She testified that the gate across the defendant's driveway was open and that she could see from the street that the garbage cart was inside the gate. According to Detective Pasho, a storm was brewing and there was fresh snow on the driveway.

- 3 -

Detective Pasho had driven by the defendant's residence on prior occasions to conduct surveillance and had observed that the gate across the driveway was sometimes open and sometimes closed. She did not recall seeing a "no trespassing" sign on the gate.

Detective Pasho testified that on December 7, 2007, she walked up the driveway and only went up to the fence line where the garbage cart was located inside the gate on the driveway. She did not check to see if the backyard was enclosed. Detective Pasho denied that she opened the security gate to reach the garbage carts. She testified that the gates were wide open and could not be moved because the snow was too deep. Detective Pasho walked onto the property, took the garbage cart and replaced it with a new garbage cart. She also replaced two other garbage carts on the same block on that date. According to Detective Pasho, the Sanitation Department periodically provides replacements for older garbage carts.

Detective Pasho took the garbage to an undisclosed location. She searched through the garbage and found marijuana residue, baggies with marijuana residue, receipts and other items. She advised MPD Officer Andrew Bell and Detective Keith Dodd of the Milwaukee Police Department of the results of her search.

In December 2007, Detective Keith Dodd, along with his partners, Officers Andrew Bell and Montel Carter were involved in an investigation of Donald Simms, Jr. for drug trafficking. On December 10, 2008, Officer Bell obtained a search warrant for the defendant's residence at 5247 N. 66th Street. The search warrant also authorized the search of persons present on the premises and autos, in addition to other items. See Exhibit 1.

During his investigation, Detective Dodd had conducted surveillance at the defendant's residence for hours at a time for at least two months prior to the time the search warrant was obtained. Detective Dodd testified that he only observed the gate to the residence closed two

- 4 -

or three times. He also he never saw the gate closed in the winter time when snow had fallen. During the time he was conducting surveillance, Detective Dodd observed the defendant driving a Range Rover and also observed numerous rental vehicles come to the defendant's residence, stay a brief period of time and leave. On at least ten occasions, Detective Dodd observed the defendant drive to his residence, exit the Range Rover and go up to a vehicle and talk to the person in the car. Detective Dodd testified that from his training and experience, when vehicles, especially rental vehicles from other states, come to locations, stay for only a brief period of time, they typically are transporting narcotics from one location to another. According to Detective Dodd, narcotics deals generally occur very quickly.

On December 12, 2008, at approximately 8:00 p.m., officers were ready to execute the search warrant. At approximately 7:30 p.m., MPD Detectives Brett Huston and Eric Donaldson were on surveillance in an undercover vehicle at the defendant's residence and were to advise the other officers if the defendant's vehicle was at his home. The officers wanted the defendant to be at the residence when the search warrant was executed. Detective Dodd was in contact with Detectives Donaldson and Huston via radio and cell phone.

After waiting about an hour, the decision was made to execute the search warrant. As Detective Dodd and his partner were driving to the defendant's residence, they observed the defendant's vehicle heading west towards his residence. The detectives slowed down a bit and then received word from Detectives Donaldson and Huston that the defendant's Range Rover and another vehicle had arrived at the defendant's home.

While conducting surveillance, Detectives Donaldson and Huston observed a Ford Taurus vehicle with Ohio plates back into the defendant's driveway. The driver remained in the vehicle. Within 30 seconds, the defendant arrived in his Range Rover and parked across the

street from his residence directly in front of the undercover car. According to Detective Huston, the defendant did not secure the Range Rover and one of the windows was open even though it was winter time.

Detective Huston observed the defendant walk up the driveway toward the Ford Taurus. As the defendant approached the vehicle, the driver popped the trunk open and then exited the vehicle. Both the defendant and the driver went to the rear of the vehicle and the defendant removed a large box or package – about a foot and a half long and several inches thick – from the trunk. The defendant walked to the rear door of his residence with the package. Detective Huston had a strong suspicion as to what was in the package based on what he had observed, but he did not know for sure what the package contained. Only a few seconds had passed from the time the defendant approached the vehicle until the trunk was closed. The driver of the Ford Taurus immediately entered his vehicle and started to exit the driveway. Detective Donaldson radioed the search team and advised them of what they had observed and that the Ford Taurus was leaving the driveway.

Detective Dodd, his partner and members of the Tactical Enforcement Unit drove to the defendant's residence and the tactical enforcement van blocked the driveway preventing the Ford Taurus that was in the driveway from exiting the driveway. Members of the Tactical Enforcement Unit went to the rear door of the residence while Detective Dodd remained in the front. Detective Dodd heard officers yelling, "he's running, he's running," and he began to pursue the defendant on foot, as did other officers, including Detective Huston. Within a minute or two, the defendant was stopped by other officers and placed under arrest for fleeing. However, the detectives also believed the defendant had just been involved in a drug deal. The defendant was placed in handcuffs and searched. The defendant had the keys to the

- 6 -

Range Rover and $6500.00 in cash on his person. According to Detective Dodd, based on his experience, usually large scale drug dealers often will carry larger amounts of cash.

After the defendant was apprehended, Detective Huston returned to the defendant's residence and upon entering the first door of the residence, he saw the package the defendant had taken out of the Ford Taurus' trunk lying on the ground. The package was right inside the doorway.

Detective Donaldson, with the assistance of Detective Huston, initially searched the Range Rover. Detective Dodd inventoried some of the paperwork from the Range Rover. About two pounds of marijuana were found inside a book bag in the Range Rover. A firearm and some additional marijuana were found in a Gucci bag inside the vehicle.

The defendant testified that he was living at his father's home at 5247 N. 66th Street on the day of the search and had personal property at the residence since 2006. The defendant's backyard is secured on the south and east by a six foot high wooden privacy fence and on the west and north by the garage and a chain link fence. The gates to the wooden fence open to allow vehicles to enter the garage which is behind the gates. The gates are secured by metal spikes on the bottom, inside the gate. A "no trespassing" sign is posted on the wooden fence facing the street. The backyard is enclosed for purposes of privacy and for security for the property.

According to the defendant, the garbage carts were kept inside the wooden fence and were not visible to someone standing outside the fence with the gates closed. When garbage was to be collected, the defendant testified that he would roll the garbage carts from the backyard to the end of the property and place them either at curb side or at the end of the driveway. If the snow was too deep, he testified that a path on the grass would be shoveled

so that the carts could be rolled to the curb. He also testified that he followed this procedure all year long as did his neighbors. The defendant denied that city garbage collectors even came inside the fence to retrieve the garbage carts and he never expected or intended to have the garbage collectors come inside the fence. The defendant testified that if he did not put the garbage carts outside the fence on garbage collection days, the garbage would not get collected. The defendant testified that garbage in his neighborhood was normally collected on Friday, but that there really was no consistency as to garbage collection day. The defendant agreed that it was snowy on about December 7, 2007.

The defendant testified that on the evening of December 12, 2007, he pulled up across the street from his residence and parked the Range Rover. According to the defendant, he locked the vehicle and the windows were closed. A man named Vargas was parked in the defendant's driveway. The defendant was expecting him and according to the defendant, he and Vargus were doing some type of transaction. The defendant testified that Vargas popped the trunk to his vehicle and the defendant removed the package from the trunk and walked to the rear entrance of his house. As he opened the screen door, he heard someone saying, "get out of the car" and he heard some screaming and cussing. The defendant testified that he did not know if he was being robbed or what was going on so he ran west, jumped over the fence into a neighbor's yard and kept going. Before he began running, the defendant stated that he dropped the package he had retrieved from the trunk between the screen door and the main door to the house.

The defendant was stopped at about 67th Street. The defendant was handcuffed, searched, put into a squad car and taken back to his residence. The squad car parked behind the defendant's Range Rover and he could observe the officers searching the vehicle. The

- 8 -

defendant did not give consent or permission to search the vehicle. An officer then got in the vehicle and drove off. The defendant denied giving anyone, including City of Milwaukee sanitation workers, permission to come into his backyard in December 2007.

## Analysis

The defendant raises several arguments in his motion to suppress the search of his residence at 5247 N. 66th Street in Milwaukee, Wisconsin. He maintains that the warrant was predicated upon information obtained from Detective Pasho's illegal search and seizure of the garbage cart located in his enclosed backyard and that without that information, the search warrant is not supported by probable cause. The defendant contends that the officer illegally trespassed upon the curtilage of his residence to retrieve the garbage in violation of the Fourth Amendment.

The defendant further contends that even if Detective Pasho did not violate his rights by her actions in retrieving the garbage, the search warrant was not supported by probable cause because the affidavit did not provide meaningful evidence of the veracity and reliability of the informant. In addition, he contends that the police did not act in good faith reliance on the warrant. Specifically, he asserts that the good faith exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897 (1984), is not applicable because Detective Pasho, as an experienced law enforcement officer, knew or should have known that her warrantless intrusion onto his property violated his constitutional rights.

He further argues that the officers unlawfully searched him. He also maintains that his Range Rover was unlawfully searched because it was not on the premises, but parked across the street. He contends that the automobile exception to the warrant requirement is not applicable in this case.

- 9 -

In opposing the motion, the government states that the search of the residence, the Range Rover and the defendant was authorized by the search warrant. The government also states that the arrest and search of the defendant was justified because the officers had information linking the defendant to drug dealing and observed what appeared to be a drug transaction on December 12, 2007. The government maintains that the search of the Range Rover was proper because the automobile was accessible to the residence and thereby authorized by the warrant. In addition, the government states that the officers had probable cause to believe that the vehicle contained evidence of drug trafficking.

Garbage Search

The defendant claims that the evidence procured in the garbage search by Detective Pasho, which was included in the warrant application, was obtained in violation of his constitutional rights and that, without such information, the affidavit in support of the warrant fails to establish probable cause for the search. The government concedes that the garbage cart and garbage seized by Detective Pasho was within the curtilage of the defendant's residence.

The Fourth Amendment grants all people the right, "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.C.A. Const. Amend. IV. In defining the term "home", the Court has included "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" Oliver v. United States, 466 U.S. 170, 180 (1984) (quoting Boyd v. United States, 116 U.S. 616, 618 [1886]). This area, termed the "curtilage", accordingly is granted protection from unreasonable search and seizure via the Fourth Amendment, as "a place where the occupants have a

- 10 -

reasonable and legitimate expectation of privacy that society is prepared to accept." <u>Dow Chemical Co. v. United States</u>, 476 U.S. 227, 228 (1986).

The government concedes that at the time Detective Pasho retrieved the garbage cart, it was within the curtilage of the defendant's residence. The government asserts, however, that the seizure of the defendant's garbage bags did not violate the Fourth Amendment because the defendant did not manifest "'a subjective expectation of privacy in . . . [his] garbage that society accepts as objectively reasonable.'" (Government's Post-Hearing Brief on Defendant's Motion to Suppress Physical Evidence [Government's Post-Hearing Brief] at 9 [quoting <u>California v. Greenwood</u>, 486 U.S. 35, 39 (1988)]).

In <u>Greenwood</u>, the police suspected that the defendant was engaged in drug trafficking and conducted surveillance of the defendant's home. A trash collector picked up the plastic garbage bags in front of the defendant's home and turned them over to the police. A search of the bags revealed items indicative of narcotics use. The information obtained from the garbage bags was used by the police to obtain a search warrant for the defendant's home. The Court held that the seizure of the defendant's garbage bags left at the curb would be a Fourth Amendment violation "only if [the defendant] manifested a subjective expectation of privacy in [his] garbage that society accepts as reasonable." <u>Greenwood</u>, 486 U.S. at 39. Although the Court accepted the personal privacy expectation of the defendant, the Court concluded that the defendant exposed his garbage to the public sufficiently to defeat his Fourth Amendment claim. The court explained that the defendant placed his garbage at the curb for "the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through [the defendant's] trash or permitted others, such as to the police, to do so." <u>Id.</u> at 40.

- 11 -

In this case, the defendant did not place his garbage at the curb. Although during summer months, City of Milwaukee residents are required to place their garbage carts curbside. At the time Detective Pasho pulled the defendant's garbage, winter rules were in effect. Under winter rules, garbage is not picked up curbside. Rather, sanitation workers retrieve the garbage from wherever the homeowner stores his garbage cart. Moreover, a designated date of pick up is not possible in the winter because collection crews also perform snow and ice removal. Winter rules are made known to city residents through the internet, a flyer on the garbage cart and the media.

The defendant's backyard is secured by a six foot high wooden fence on the south and east and on the north and west by the residence and a chain link fence. The wooden fence has gates which allow vehicles to enter the garage which is behind the fence. A "no trespassing sign" is affixed to the gates. On December 7, 2007, the defendant's garbage cart was located within the fence, adjacent to the open gate and, according to Detective Pasho, visible from the street.

Although the defendant testified that the gates to the wooden fence were basically always closed, Detective Dodd testified that the gates were open on all but three days during his two month surveillance and that they were always open when winter came and snow started to fall. Moreover, when Detective Pasho arrived at the defendant's residence between 6:00 and 7:00 a.m. on December 7, 2007, to conduct the garbage search, she observed that the gates were open and that substantial snow had accumulated which prevented the gates from being closed.

The defendant testified that he – and his neighbors – always took their garbage carts to the curb for garbage collection, even in the winter, thereby supporting his argument that he

- 12 -

had an expectation of privacy in his garbage. The court, however, finds the defendant's testimony not credible. During the winter months, garbage collection days vary because sanitation workers are also responsible for snow and ice removal in the city. Therefore, the defendant would not have known what day his garbage would be picked up. Moreover, when Detective Pasho inquired of the Sanitation Department about garbage collection in the 5200 block of N. 66th Street, she was advised that, under winter regulations, the sanitation worker would go onto the properties to retrieve the garbage carts.

Thus, although the defendant testified that he had a subjective expectation of privacy in the contents of his garbage cart, under the circumstances, the court concludes that society would not accept the defendant's expectation as reasonable. See Dow Chemical Co., 476 U.S, at 228. Therefore, the court will recommend that the portion of the defendant's motion seeking suppression of evidence based on the garbage search be denied.

Probable Cause for the Warrant

The defendant maintains that the search warrant was not based on probable cause. In determining whether probable cause exists to support a search warrant, the judge must consider the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Brack, 188 F.3d 748, 755 (7th Cir. 1999). "The task of the issuing magistrate is simply to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Newsom, 402 F.3d 780, 782 (7th Cir. 2005), cert. denied, 546 U.S. 1224 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 [1983]).

- 13 -

"Probable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003). "Probable cause denotes more than mere suspicion, but does not require certainty." United States. v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990) (quoting United States v. Ellery, 678 F.2d 674, 677 [7th Cir. 1982]).

"Probable cause does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense." United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006) (internal quotations and citations omitted). Thus, a judge making a probable cause determination "need not determine that the evidence sought is in fact on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place . . .. He need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." United States v. Malin, 908 F.2d 163, 166 (7th Cir. 1990) (emphasis in original) (quoting United States v. Peacock, 761 F.2d 1313, 1315 [9th Cir. 1985]); see also, United States v. Sleet, 54 F.3d 303, 306 (7th Cir. 1995). "In the case of drug dealers, evidence is likely to be found where they live." United States v. Certain Real Property, 943 F.2d 721, 724 (7th Cir. 1991); see also, Anderson, 450 F.3d at 303.

When an affidavit in support of a search warrant is based on a confidential informant's tip, the totality of the circumstances assessment involves multiple factors, including: "(1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and police

- 14 -

officer's applications for the search warrant." United States v. Wiley, 475 F.3d 908, 915 (7th Cir. 2007) (quoting United States v. Koerth, 312 F.3d 862, 866 [7th Cir. 2002]); United States v. Jones, 208 F.3d 603, 609 (7th Cir. 2000). No single factor is determinative. Rather, "a deficiency in one factor may be compensated by a strong showing in another or by some other indication of reliability." Peck, 317 F.3d at 757 (quoting United States v. Brack, 188 F.3d 748, 756 [7th Cir. 1999]).

"Credibility . . . is a matter of the totality of the circumstances." United States v. Buckley, 4 F.3d 552, 556 (7th Cir. 1993) (citing Illinois v. Gates, 462 U.S. 213, 234 [1983]). Indeed, "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of the alleged wrongdoing, along with a statement that the event was observed first hand, entitles his tip to greater weight than might otherwise be the case." Illinois v. Gates, 462 U.S. at 234.

Statements against penal interest also have been found to increase the reliability of information provided by an informant. See Buckley, 4 F.3d at 556 ("For the search warrant to be supported by probable cause, [the informant] must have spoken against her penal interest at the time she admitted to [the arresting officer] that she purchased cocaine from the defendants."); see also, United States v. Harris, 403 U.S. 573, 587 (1971); United States v. Barnes, 909 F.2d 1059, 1069 (7th Cir.1990) (noting than an informant's admission against his penal interest supports the informant's credibility).

In this case, the affidavit of Officer Andrew Bell in support of the search warrant provides information from a confidential informant about the defendant's involvement in the distribution and sale of cocaine. Officer Bell averred that he believed that the informant was credible because he previously had given the affiant and other law enforcement officers information

- 15 -

about drug trafficking in the Milwaukee area which Officer Bell had been able to confirm by reviewing controlled substances intelligence files in the offices of various law enforcement agencies. In addition, the information provided to the affiant was against the informant's own interest.

According to the warrant application, the informant had identified the defendant, Donald Simms, Jr., as a person heavily involved in cocaine trafficking and described him as a dark complected black male about six feet tall, weighing about 250. The informant also provided the defendant's date of birth and a detailed description of the defendant's place of residence. The informant provided information about a green colored Range Rover which the informant stated the defendant used in distributing quantities of drugs. The informant also advised that the defendant was the primary driver of this vehicle.

Officer Bell conducted a follow-up investigation which corroborated the information provided by the informant. He observed vehicles, including the green colored Range Rover, parked in the driveway of the residence at 5247 N. 66th Street. A check of the registration plates with the Wisconsin Department of Transportation showed that the vehicle listed to Donald W. Simms, Sr. Officer Bell conducted surveillance at the defendant's residence on numerous occasions and observed the defendant entering and exiting the Range Rover at this residence. Detective Bell further avers that disclosure of the informant's identity would end the informant's usefulness to the Milwaukee Police Department, could result in physical harm to the informant and would also discourage citizens from advising law enforcement about drug trafficking for fear that drug dealers would learn their identities.

The affidavit details the results of a garbage search conducted at the defendant's residence on December 7, 2007, based upon the information provided by the confidential

- 16 -

informant. A quantity of marijuana was found scattered in one black plastic garbage bag. Another bag contained a clear plastic sandwich bag containing suspected marijuana, as well as several other clear sandwich bags. A field test conducted on the substances showed that the substances were marijuana.

The affidavit in support of the search warrant provides sufficient evidence to reasonably believe that the search would uncover evidence of a crime. See Peck, 317 F.3d at 756. Accordingly, based upon the totality of the circumstances, the court finds that the search warrant for the defendant's residence was supported by probable cause.

Even if the court was to conclude that the affidavit failed to establish probable cause that evidence of a crime would be found at the residence, suppression of the evidence is not warranted. In Leon, 468 U.S. at 926, the Supreme Court held that an officer's good faith reliance on a court's determination of probable cause should not lead to the exclusion of probative evidence simply because a reviewing court later determined that probable cause was lacking. Thus, a facially valid warrant issued by a neutral, detached magistrate will be upheld if the police relied on the warrant in good faith. Id. The Court in Leon explained: "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were reckless or dishonest in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id.

An officer's decision to seek a warrant is prima facie evidence that he was acting in good faith. United States v. Otero, 495 F.3d 393, 398 (7th Cir.), cert. denied, 128 S.Ct. 425 (2007); Wiley, 475 F.3d at 917 (citing United States v. Koerth, 312 F.3d 862, 866 [7th Cir. 2002]); Peck, 317 F.3d at 757. "The defendant must defeat this presumption with evidence that the issuing

magistrate judge wholly abandoned his judicial role or that the officer's affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Wiley, 475 F.3d at 917.

In this case, the defendant does not argue that the judge abandoned his role as a neutral and detached judicial officer when he issued the warrant, nor does he assert that the Officer Bell was reckless or dishonest in preparing the affidavit. Thus, the focus is whether "the affidavit presented to the judge was 'so lacking in indicia of probable cause,'Leon 468 U.S. at 923, that no officers could have 'harbored an objectively reasonable belief' to the contrary. Id. at 926." Koerth, 312 F.3d at 869.

Considering the totality of the circumstances presented, the affidavit is not so plainly deficient that a well-trained officer could have concluded that it did not establish probable cause. Here, the judge reviewing the warrant application determined that the affidavit was supported by probable cause. Accordingly, it was reasonable for the officers to rely on the warrant issued by a neutral and detached judicial officer. See Leon, 468 U.S. at 923. Thus, for the reasons stated herein, the court will recommend that the portion of the defendant's motion seeking suppression of the search of his residence be denied.

Search of the defendant

The defendant challenges the search of his person on December 12, 2007. However, the search warrant authorized the search of "all persons present on premises, autos, certain goods, and other items, as well as the search of the residence at 5247 N. 66th Street. (Exhibit 1). The defendant was on the premises, but fled when he observed the officers at his home. The fact that he fled does not negate the authority to search him as a person on the premises.

- 18 -

In addition, the facts also establish that Detective Huston, who was conducting surveillance at the defendant's residence prior to executing the warrant, observed what he believed, based on his training and experience, to be a drug deal. He also knew that the defendant was associated with drug trafficking. He observed a Ford Taurus automobile with Ohio plates back into the defendant's driveway. The driver did not exit the vehicle. Shortly thereafter, the defendant drove up and parked his Range Rover across the street from his residence. The defendant walked to the Ford Taurus and after the driver popped the trunk, the defendant removed a large package, about one and half feet long and several inches thick, from the trunk and walked to the rear of his residence. The driver of the Taurus immediately returned to his vehicle and started to leave. Given the circumstances, Detective Huston had a "strong suspicion" that the package contained drugs and that a drug deal had occurred. (Tr. 91). Moreover, when a police vehicle blocked the driveway, thereby preventing the Ford Taurus from exiting the driveway, the defendant fled.

At the time of the defendant's arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information "were sufficient to warrant a prudent man in believing that [the defendant] had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 91 (1964). Therefore, based on the totality of the circumstances, the court concludes that the officers had probable cause to arrest the defendant for drug dealing after he fled the scene. See Illinois v. Gates, 462 U.S. at 230-31.

In sum, the search warrant authorized the search of the defendant. Moreover, the officers had probable cause to believe that the defendant had been involved in a drug transaction prior to his flight. Accordingly, for the reasons stated herein, the court will

- 19 -

recommend that the portion of the defendant's motion seeking suppression of the search of his person be denied.

Search of the Range Rover

The defendant asserts that the warrant authorized the search of vehicles on the premises and storage areas accessible to the residence. He points out, however, that the Range Rover, which was legally parked, was not on the premises or accessible as a storage area. The defendant also maintains that the automobile exception to the warrant requirement does not justify the search of the Range Rover.

To the contrary, the government argues that the search of the Range Rover was authorized by the search warrant and even if not expressly authorized by the warrant, the officers had cause to search it under the automobile exception to the warrant requirement. The government points out that warrant authorized the search "to include all storage areas accessible to 5327 N. 66th Street and all persons present on premises, autos, certain goods, chattels and property." (Exhibit 1).

In this case, the search warrant specifically authorized the search of autos and the warrant affidavit identified the Range Rover as the vehicle the defendant used to distribute quantities of drugs. The affiant on the warrant application conducted surveillance on numerous occasions at the defendant's residence and observed him entering and exiting the vehicle at his residence. Although the Range Rover was not on the premises, it could be argued, as the government does, that the vehicle was a storage area accessible to the premises.

Regardless, the search of the Range Rover was proper pursuant to the automobile exception. Under the automobile exception to the warrant requirement, a car may be searched without a warrant "so long as there is probable cause to believe it contains contraband or

- 20 -

evidence of illegal activity." United States v. Washburn, 383 F.3d 638, 641 (7th Cir. 2004) (citing Carroll v. United States, 267 U.S. 132, 153-56 [1925]); United States v. Matthews, 32 F.3d 294, 298 (7th Cir. 1994); United States v. McGuire, 957 F.2d 310, 314 (7th Cir. 1992). As the court explained in Washburn: "The original premise for the automobile exception was that a vehicle's 'inherent mobility' made an 'immediate intrusion' necessary to prevent the destruction of evidence." 383 F.3d at 641 (quoting California v. Carney, 471 U.S. 386, 390-92 [1985]). In Carney, however, the Court explained that a second reason justified the exception even in cases where an automobile was not "immediately mobile" – the lesser expectation of privacy in a vehicle owing to its pervasive regulation. 471 U.S. at 391-92; see also, Pennsylvania v. Labron, 518 U.S. 938, 940 (1996); Washburn, 383 F.3d at 641.

Here, the evidence establishes that a confidential informant had advised the affiant that the defendant, who the informant described as a dark complected black male, about six feet tall and weighing about 250 pounds, was involved in the distribution and sale of cocaine, that he resided at 5427 N. 66th Street and that he was the primary driver of a Range Rover which he used to distribute quantities of drugs. Information about the defendant and his residence was corroborated by law enforcement officers. Moreover, during a search of the defendant's garbage, marijuana residue was found scattered in one plastic garbage bag and marijuana was found in a clear plastic sandwich bags.

In addition, as the officers were conducting surveillance at the defendant's residence prior to executing the search warrant, they observed a Ford Taurus with Ohio plates back into the defendant's driveway. Shortly thereafter, the defendant drove up in his Range Rover, parked and walked to the vehicle. He retrieved a large package from the trunk of the vehicle, at which time he walked to the rear of his residence as the driver of Taurus attempted to drive

away. The entire encounter between the defendant and the driver of the Taurus was very brief. When the officers blocked the Taurus' exit, the defendant fled on foot and was apprehended by law enforcement officers a few blocks away. In searching the defendant, the officers found a large quantity of cash which, based on the circumstances, they believed was indicative of drug dealing.

Given the defendant's arrival at his residence in the Range Rover, his encounter with the driver of the Taurus and retrieval of a large package from the Taurus' trunk, his fleeing the residence and subsequent apprehension and the large amount of cash he had on his person, the officers had probable cause to believe that evidence of drug dealing would be found in the Range Rover. Therefore, the court will recommend that the portion of the defendant's motion seeking suppression of evidence obtained from the Range Rover be denied.

In sum, for the reasons stated herein, the court will recommend that the defendant's motion to suppress items seized by law enforcement officers on December 12, 2007, from his residence, his person and his Range Rover be denied.

### MOTION TO SUPPRESS ITEMS SEIZED ON MARCH 24, 2008

The defendant seeks suppression of items seized from a metal container located at ABF trucking in West Allis, Wisconsin. According to the affidavit in support of the warrant, a drug detection dog had alerted on the container, giving a positive indication for the presence of a controlled substance. The defendant asserts that because the warrant application failed to establish the overall reliability of the drug detection dog and because there was only a single dog sniff, the warrant lacked probable cause to search the container. He also states in his reply brief that the affidavit contained no information that drugs had been observed at ABF Trucking or in the container at issue.

- 22 -

In opposing the motion, the government asserts that the affidavit supporting the warrant establishes that a drug detection dog had alerted to the presence of controlled substances in the container. The government points out that the canine team -- the certified dog handler and the drug detection dog – had been trained and certified in the detection of controlled substances and had detected controlled substances more than 100 times resulting in the recovery of controlled substances. In the alternative, the government maintains that even if the warrant was deficient, the good faith exception to the exclusionary rule would apply in this case.

## Analysis

As previously discussed, the court must consider the totality of the circumstances to determine whether probable cause exists to support a search warrant. Brack, 188 F.3d at 755 (citing Illinois v. Gates, 462 U.S. 213, 238 [1983]). In this case, a review of the affidavit of Detective Raul Rivera of the Milwaukee County Sheriff's Office Drug Enforcement Unit reveals that within the previous 72 hours, a canine team made an "alert" on a gray metal container to be delivered to Jerome Mulvaney.[2] The affidavit explains that when a canine team detects a controlled substance, the dog "alerts" on the location by aggressively sniffing and scratching at the item or location containing controlled substances.

The affidavit establishes that the canine team, consisting of Deputy Daniel Dittberger, the dog handler, and Arras, the drug detection dog, had attended a school on training and handling of a drug detection dog and that the team is certified in the detection of heroin, cocaine and marijuana. The affidavit also states that the canine team has detected controlled substances more than 100 times which has led to the execution of four search warrants.

---

[2]According to the defendant, it is undisputed that Jerome Mulvaney is an alias for Donald W. Simms, Jr. See Defendant's Combined Motion to Suppress Evidence at 8, n. 2.

Controlled substances were found during the execution of these warrants. According to the affidavit, the canine team made a "hit" on a metal container which was a positive indication that controlled substances were located in that container.

Contrary to the defendant's assertion, the information in the search warrant affidavit sufficiently establishes the drug detection dog's reliability. Although the defendant states that the affidavit does not indicate whether the dog previously had given false alerts or whether the dog's reliability had ever been judicially questioned, the defendant cites no case law requiring such information to support probable cause. "A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance." United States v. Robinson, 390 F.3d 853, 876 (6th Cir. 2004), cert. denied, 128 S.Ct. 1677 (2008) (quoting United States v. Diaz, 25 F.3d 392, 393-94 [6th Cir. 1994]). The court further explained: [A]fter it is shown that the dog is certified, all other evidence relating to his accuracy goes only to the credibility of the testimony, not to the dog's qualifications." Robinson, 390 F.3d at 875 (quoting United States v. Boxley, 373 F.3d 759, 762 [6th Cir. 2004]); see also, United States v. Dortch, 199 F.3d 193,197 (5th Cir. 1999) (Once police dogs trained to sniff for drugs "alerted" to the driver's side of the car, probable cause to search the vehicle was established.); United States v. Thomas, 87 F.3d 909, 912 (7th Cir. 1996).

Here, the affidavit establishes that the drug detecting dog, Arras, and his handler had attended drug detection training. This canine team has been certified in the detection of heroin, cocaine and marijuana and had detected controlled substances more than 100 times. Their efforts resulted in the execution of four search warrants. Moreover, to the extent the defendant suggests that the search warrant affidavit did not include all necessary information, in United States v. Streich, 759 F.2d 579, 586 (7th Cir. 1985), the court stated that Illinois v.

- 24 -

Gates does not require that the judicial officer be informed of all circumstances before issuing a warrant. Rather, under the totality of the circumstance approach, the task of the magistrate judge "is to make a practical, common-sense decision on probable cause based on *all the circumstances set forth in the affidavit before him.'"* Id. (quoting Illinois v. Gates, 103 S.Ct. at 2332)

In this case, the affidavit in support of the warrant sufficiently established the reliability of the canine team and the "alert" on the ABF container. Based on all the circumstances, the judicial officer issuing the warrant reasonably concluded that evidence of a crime would be found in the ABF container. See Anderson, 450 F.3d at 303; Malin, 908 F.2d at 166.

Even if the court were to conclude that the search warrant affidavit failed to establish probable cause for the search of the ABF container, the good faith exception to the exclusionary rule is applicable. A law enforcement officer is entitled to rely in good faith upon the existence of probable cause as determined by a neutral judicial officer. Leon, 468 U.S. at 926. There is no indication that the judicial officer issuing the warrant abandoned her role as a neutral and detached judicial officer or that the affiant was reckless or dishonest in preparing the affidavit. Based on the totality of the circumstances, the affidavit is not so plainly deficient that the officer could have determined that it failed to establish probable cause for the search. seeking suppression of evidence seized from an ABF container on March 24, 2008, be denied. Therefore, the defendant has not established grounds to suppress the search of the ABF container. Accordingly, the court will recommend that the portion of the defendant's motion.

**CONCLUSION**

NOW, THEREFORE, IT IS HEREBY RECOMMENDED that the United States district judge enter an order **denying** defendant Simms' motion to suppress evidence seized on December 12, 2007 and his motion to suppress evidence seized on March 24, 2008. (Docket #27).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 26th day of August, 2008.

BY THE COURT:

_____s/ Patricia J. Gorence_____
PATRICIA J. GORENCE
United States Magistrate Judge

O:\CRIM\Simms rec-pjg.wpd

- 26 -